IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUIS ANTONIO AGUIRRE,

    Petitioner,

  v.

RAYMOND MADDEN,

    Respondent.

No. C 17-05232 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Luis Antonio Aguirre is a state prisoner serving a sentence of 90-years-to-life consecutive to an additional 64-year term of imprisonment. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254 on the grounds that the trial court violated due process by admitting his purportedly involuntary confession. He also claims that his lawyer's failure to seek exclusion of his confession at trial denied him effective assistance of counsel. For the reasons stated below, the petition is **DENIED**.

## STATEMENT

In 2011, prosecutors filed a felony criminal complaint and information against petitioner Luis Antonio Aguirre in the Superior Court of California, County of Santa Clara, alleging that petitioner repeatedly molested his step-granddaughter, Kassandra Doe, between 1998 and 2004 when Kassandra was between the ages of seven and 12 years old. Shortly before trial in 2013, the prosecution filed an amended information alleging 12 counts of aggravated sexual assault of a child under 14 years of age and 12 counts of forcible lewd acts upon a child. Following trial,

a jury found petitioner guilty of multiple of the charged counts. The trial court sentenced petitioner to 90 years-to-life in prison consecutive to an additional 64-year term of imprisonment (CT 1–42, 1038–46).

Petitioner timely appealed. On appeal, petitioner argued that the trial court erred in admitting a recorded statement that petitioner had made to police in 2011. He argued that the statement had been made involuntarily and was therefore inadmissible against him. In the alternative, petitioner argued that he was denied effective assistance of counsel based on his counsel's failure to object to the trial court's admission of the evidence (Dkt. No. 10-12 Exhs. C–E). The state appellate court summarized the circumstances of petitioner's statement to the police as follows (*People v. Aguirre*, No. H041415, 2016 WL 3679901 (Cal. Ct. App. July 6, 2016)):

Detectives Angel Mina and Tina LaTendresse of the San Jose Police Department interrogated petitioner following his arrest in October 2011. During the interrogation, the detectives provided the following false information to petitioner: (1) Kassandra had undergone a physical examination when she was younger; (2) police had medical records from when Kassandra was younger; (3) when a child has sexual intercourse, it causes scarring; (4) Kassandra had scarring due to sexual intercourse as a child; (5) Kassandra kept clothing from when she was a little girl; (6) a sample of petitioner's DNA, which was obtained during the interrogation, had been analyzed; and (7) petitioner's DNA was on Kassandra's clothing. Detective Mina also testified at trial that she showed petitioner a false DNA report during the interrogation.

The recorded interrogation began around 10:00 a.m. Petitioner waived his *Miranda* rights. The detectives began by asking petitioner background questions and offering him food. They asked petitioner if he had any idea why he was being questioned, to which he responded that it may be related to a phone call he received from Kassandra, who had recently accused him of "sexual harassment" when she was a child. When the detectives asked petitioner what sort of sexual harassment Kassandra had alleged during the phone call, he said he had never

touched Kassandra and that when she was a child she would "go crazy" and "jump all over" him. He elaborated that Kassandra would "rub" him and "hug" him.

After petitioner gave the detectives permission to extract a DNA sample from his mouth, the detectives falsely said that DNA "can stay on clothing" and "can stay inside the body" for "years." Detective LaTendresse falsely told petitioner that Kassandra "had an exam when she was younger," "some things were found," and that was why they wanted a sample of petitioner's DNA. Detective LaTendresse also falsely told petitioner that Kassandra "kept her clothing when she was a little girl" and asked if there was "any reason why [petitioner's] DNA would be on any of her clothing." He responded, "No, no, no."

After about an hour, the detectives offered petitioner water, coffee, and food and gave him a break from questioning. After about five minutes, the detectives returned and again offered petitioner food before swabbing the inside of his cheek. After obtaining the swabs, Detective Mina said, "We're gonna drop these off." The detectives left the room at 11:15 a.m. and resumed questioning at 11:29 a.m. Immediately upon resuming the questioning, Detective Mina asked petitioner if he was "okay." He responded, "Yeah." Detective Mina told petitioner that she "[did]n't want to be disrespectful." She reminded petitioner that his house had been searched by police and informed him that there was "enough evidence against" him to search his house and question him. Detective Mina advised petitioner "to be honest," and he continued to deny touching Kassandra. After Detective Mina said she would "not listen to any more lies," petitioner told the detectives that "sometime" he removed Kassandra's underwear "[f]rom the dirty clothes" and licked them. He explained that he did so because "she used to come and grab and hug [him] hard."

Detective Mina asked petitioner what he did after he licked the underwear, in response to which he insisted that he "didn't do anything." Detective Mina said, "I'm in charge now," again advising petitioner to "tell the truth." She reminded him that the "stuff is at the lab," and informed him falsely that DNA "doesn't go away after a year, two years, five years." Petitioner continued to deny touching Kassandra in a sexual manner. Detective Mina accused petitioner of lying, informed him that police "seized a bunch of stuff from [his] house," and advised him

3

that he could not "make this go away" because police had his DNA. Detective LaTendresse also stated:

> I believe that this is not all your fault. I believe that this — I've seen this young lady. I know she's very attractive. And she probably was very attractive as [a] — girl, okay. And she probably had some curiosities and she may have been interested in you in that way . . . . And I can understand how you could be attracted to her because she probably came on to you, okay. But we understand that. The big thing is, Luis, we just want to know the truth of what happened and why. That's it. We know what happened. But we want you to tell us what happened.

Petitioner continued to deny touching Kassandra and denied any attraction to her. Detective Mina reminded petitioner about licking Kassandra's underwear and falsely told him that DNA "[i]n the mouth" is "[n]ot the same." Petitioner responded that he "didn't do sex to her." He then stated that Kassandra sat on his lap in the jacuzzi, she did "a lot of crazy stuff," and semen "might" have leaked from his penis.

Detective LaTendresse told petitioner to "get it off [his] chest." He responded that Kassandra was "attractive" and "[s]he go crazy." He said that he was "so stupid," but continued to insist that he "didn't do her sexual." When Officer Mina asked petitioner what he had done, he stated that Kassandra sat in his lap and tried to grab his "thing." He emphasized that he never "penetrate[d]" Kassandra. When Detective LaTendresse asked if he ever put his penis inside Kassandra's vagina, petitioner stated, "No, never, no." The detectives told petitioner that "there was some type of contact" between his penis and Kassandra and asked him to explain "what it was." Defendant admitted that he put his leg on top of Kassandra's legs and that his penis "was leaking through" his underwear. He stated, "[I]t might be some DNA because I was leaking." He continued to emphasize, however, that he "didn't sexual her." Detective Mina informed petitioner that his wife saw him rub his penis against Kassandra and asked if his wife was lying. Petitioner stated that Kassandra "went crazy" on his leg "like she was doing sex." He also stated that Kassandra would "go on top" of his penis when he was clothed and do "horsy riding."

The detectives then showed petitioner an envelope and said, "This is the DNA stuff." The detectives accused petitioner of penetrating Kassandra, explaining falsely that the "lab

4

results" showed that Kassandra had vaginal scarring "from when she was younger." They also falsely stated that petitioner's semen was found inside Kassandra's vagina. Petitioner responded that he "didn't penetrate her." Detective Mina falsely told petitioner, "[T]here's DNA from your fingers insider her too." Petitioner denied touching Kassandra with his hands and repeatedly denied penetrating Kassandra. The detectives again offered petitioner coffee and water and gave him a break from questioning at 12:34 p.m.

The detectives resumed their questioning at 1:13 p.m. Detective Mina asked petitioner if he tried to get Kassandra to perform oral sex. He said, "No." Detective LaTendresse then advised petitioner that she and Detective Mina were going to ask him some questions to "make sure" the detectives "didn't disrespect" him during the interrogation. When the detectives asked petitioner how he felt when they accused him of lying, he stated that he felt "relief in [his] chest." Detective LaTendresse asked petitioner, "Were we respectful to you?" He responded, "Oh, no, no, no, no. No, you do your job. You did a great job." Detective LaTendresse then asked, "We treated you okay?" He replied, "Oh, yeah . . . . Everything good." The interrogation ended at 1:42 p.m. A video of the interrogation was played for the jury.

The California Court of Appeal affirmed the judgment in an unpublished decision in July 2016, concluding that petitioner's confession was voluntary and declining to reach petitioner's alternative argument that his trial counsel was ineffective in his failure to object to the confession's admission. The California Supreme Court summarily denied petitioner's petition for review. This federal habeas petition followed (Dkt. Nos. 1, 10).

**ANALYSIS**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, applies to petitioner's case. Under AEDPA, federal courts may grant a writ of habeas corpus only if the state-court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Where, as here, the California Supreme Court denied review of petitioner's direct appeal without comment, the

5

Court must look to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment. *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

Petitioner's primary claim in this federal habeas petition is that the admission of his confession at trial denied him due process because the statement was involuntary. He argues, as he did on appeal, that two elements of the detectives' tactics amounted to coercion: (1) the detectives falsely claimed to have physical evidence against him, including DNA evidence, and (2) the detectives suggested that petitioner's alleged crimes were mitigated by Kassandra's own behavior.

A defendant is deprived of due process if his conviction is founded upon an involuntary confession. *Lego v. Twomey*, 404 U.S. 477, 485 (1972). "A confession is involuntary if it is not 'the product of a rational intellect and a free will.'" *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (citation omitted). To determine whether a confession was involuntary, courts must consider the totality of the circumstances, including the length, location, and continuity of the interrogation; the defendant's maturity, education, physical condition, and mental health; whether the defendant was advised of his rights; and whether counsel was present. *Withrow v. Williams*, 507 U.S. 680, 693 (1993). The fact that the police misrepresented the amount of evidence against a defendant is, while relevant, insufficient to make an otherwise voluntary confession inadmissible. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969).

An officer's outright lies about the existence of evidence against an interrogee must be examined with great care, as they can easily cause someone to conform their story to the officer's lies. Following a careful examination, this order nevertheless concludes that the state court of appeal's totality of the circumstances analysis was not an unreasonable application of federal law. As noted in the appellate court's decision, "[a]lthough the detectives' lies about DNA may have influenced defendant to admit licking Kassandra's underwear and to admit that his penis was 'leaking,'" the detectives "repeatedly tried to get defendant to confess to penetrating Kassandra's vagina with his penis or his finger" to no avail. If the detectives' tactics were as coercive as petitioner claims, however, they "would have prompted defendant to

confess to penetration, regardless of whether or not he penetrated Kassandra." The record therefore demonstrates that petitioner's "resistance, far from reflecting a will overborne by official coercion, suggests instead a still operative ability to calculate his self-interest in choosing whether to disclose or withhold information." And, in rejecting petitioner's argument that Detective LaTendresse's tactic of describing Kassandra as "very attractive" and suggesting that Kassandra "came on to" petitioner rendered his confession involuntary, the state appellate court correctly concluded that the statements did not constitute a promise of leniency but rather conveyed a possible excuse for petitioner's conduct.

In addition, the court of appeal also correctly identified and weighed the following factual circumstances: (1) the detectives did not make threats or promises during the interrogation, (2) the interrogation was not unduly lengthy and the detectives gave petitioner breaks from questioning, (3) the detectives made an effort to make petitioner comfortable, offering him food and beverages throughout the interrogation, (4) at 51 years old, petitioner had the maturity to freely decide whether to confess, and (5) petitioner was not uneasy during the interrogation — he laughed during questioning, affirmed that the detectives treated him "okay," and stated that the detectives "did a great job" during the interrogation. These facts are all consistent with the requirements of voluntariness outlined in *Withrow*, 507 U.S. at 693. The state appellate court's determination, based on the totality of the circumstances, that petitioner's will was not overborne by police coercion is not contrary to, or an unreasonable application of, Supreme Court precedent nor an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal habeas relief is therefore not warranted on this claim.

Petitioner's remaining arguments regarding this claim are unavailing. *First*, he argues that a *de novo* review is required because the state court of appeal did not mention that, for purposes of federal law, the government must prove the voluntariness of a confession by a preponderance of the evidence. Even if petitioner is correct that *do novo* review is required, this order would nevertheless conclude, for the reasons set forth above, that petitioner's statements were not coerced. *Second*, petitioner argues that the state appellate court failed to weigh that he

"was not an educated man," that English was not his "main language," and that he "had no way of knowing that police officers routinely lie in these interviews." Importantly, however, where a petitioner has not established that a confession was the product of coercion, the petitioner's alleged lack of intelligence and education will not render the confession involuntary. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1997), overruled on other grounds *United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014). In any event, here, the state court's failure to expressly weigh these factors does not render its conclusion — that, under the "totality of the circumstances," including petitioner's maturity and education, his statements were voluntary — unreasonable.[1]

Petitioner's claim that trial counsel's failure to move to exclude the confession from evidence denied him effective assistance of counsel also fails. A petitioner claiming ineffective assistance of counsel must demonstrate that: (1) counsel's actions were outside the wide range of professionally competent assistance, and (2) that the petitioner was prejudiced by reason of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 686–90 (1984). "[I]n order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion." *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) (citation omitted). As explained above, both the state court of appeal and the undersigned judge have determined that petitioner's statements to police were voluntary. Trial counsel's failure to make a meritless motion cannot be considered deficient performance under *Strickland*. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Federal habeas relief on petitioner's second claim is therefore unwarranted.[2]

---

[1] For this reason, petitioner's "conditional motion" for an evidentiary hearing, in which he argues that "it is assumed that petitioner was a mature individual, understood the English language, was of average intelligence," is **DENIED**. Even if this were not a case where federal review under Section 2254 "is limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), no further factual development of petitioner's claim is necessary.

[2] Although petitioner raised his ineffective assistance of counsel argument in state court, the court of appeal did not address the issue because it concluded that the confession was not involuntary. *Aguirre*, 2016 WL 3679901, at *1 n.1. In his petition for review filed in the California Supreme Court, petitioner claimed that his statement to police should have been suppressed as involuntary under the Fourteenth Amendment, but did not claim that he was denied effective assistance of counsel due to his attorney's failure to move to suppress his statement. Accordingly, respondent argues, his ineffective assistance of counsel is unexhausted. Because this

Finally, a certificate of appealability will not be issued on either of petitioner's claims. For the reasons set out above, jurists of reason would not find the denial of petitioner's claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from our court of appeals under Rule 22 of the Federal Rules of Appellate Procedure.

## CONCLUSION

For the reasons set forth above, all claims in petitioner's Section 2254 petition are **DENIED** and a certificate of appealability will not issue. Judgment will be entered separately.

**IT IS SO ORDERED.**

Dated: May 13, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

order denies the claim on the merits, it does not address respondent's exhaustion argument.

9